**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| BOBBIE SUE WATSON, ) | |
| ) | CASE NO. 5:11-cv-00717 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Bobbie Sue Watson ("Watson") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying her claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, *et seq*, and partially denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

**I. Procedural History**

On September 12, 2002, Watson filed an application for POD, DIB, and SSI alleging a

disability onset date of October 14, 1998. Her application was denied both initially and upon reconsideration. Watson timely requested an administrative hearing.

On September 8, 2006, an Administrative Law Judge ("ALJ") held a hearing during which Watson, represented by counsel, testified. On October 26, 2006, the ALJ issued a partially favorable decision finding Watson was disabled as of December 12, 2004 and, therefore, entitled to SSI benefits.[1] (Tr. 32-42.) Watson requested a review of the ALJ's decision. The Appeals Council found Watson disabled as of October 11, 2005 – the date she attained fifty-five (55) years of age – and remanded the case for further proceedings to determine whether she was also disabled between her alleged onset date and October 10, 2005. (Tr. 43-47.)

On November 24, 2008, a second hearing was held during which Watson, represented by counsel, testified. On January 30, 2009, the ALJ found Watson was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age 55 at the time of her first administrative hearing, Watson is a "person of advanced age" under social security regulations. *See* 20 C.F.R. § 404.1563(e) & 416.963(e). She has a limited, ninth-grade education.

*Hearing Testimony*

At the hearing held on November 24, 2008, Watson testified as follows concerning her

---

[1] The ALJ found that Watson's insured status expired on March 31, 2004. (Tr. 38.)

work history, and mental and physical health between October 14, 1998, and October 10, 2005:[2]

- In 1999, she had a lot of anxiety and panic attacks. She was working in the meat department at Giant Eagle and was the only woman there. She was terminated after striking a fellow employee who had touched her inappropriately on repeated occasions. (Tr. 834-35.)

- The heaviest part of her job at Giant Eagle was shoveling ice. She also had to lift large hams and turkeys. The largest would be approximately twenty pounds. There was a lot of lifting repetition throughout the day. (Tr. 836-37.)

- The anxiety made it difficult for her to go to work. She had a hard time dealing with customers. (Tr. 838.)

- She started treatment with a doctor in February of 1999 at Akron General Hospital. She was prescribed Effexor. (Tr. 839.)

- She stated that Dr. Fitzgerald's name sounded familiar, and thought "she was the one who turned me over to Akron General Medical Center." There she saw three different psychiatrists. (Tr. 841-42.)

- When Effexor did not help, she was prescribed Zoloft. She stated that the Zoloft did help and that she was on it for eight years. Ultimately, Zoloft stopped working, at which time her doctor changed her medication. (Tr. 843.)

- At times, she interacted with her family and went out, but most of the time she stayed home and watched television. (Tr. 843.)

- She was able to perform chores inside the house so long as it was not anything "real heavy." (Tr. 844.)

- She began taking Klonopin for anxiety after her termination from Giant Eagle, which helped and did not cause any side effects other than making her tired. (Tr. 844-45.)

- She did not drive during the relevant time period because she was too anxious. She wrecked her car in 1999. (Tr. 847-48.)

- She did not perform her own grocery shopping. She hated grocery stores because

---

[2] The ALJ informed Watson that he did not need to know about her condition as it was at the time of the hearing, and asked her to testify as it related to the relevant time period. (Tr. 829-830.)

> > of Giant Eagle. (Tr. 849.)
>
> • After her termination, she began making crafts to pass the time but eventually became bored with it. (Tr. 850-51.)
>
> • The last grade she completed was the ninth. (Tr. 854.)

Thomas Nimberger also testified at the hearing as an impartial vocational expert ("VE"). He opined that Watson's past work at Giant Eagle was medium exertional work as normally performed and as performed by Watson. (Tr. 855-56.) The ALJ posed the following hypothetical question to the VE:

> ... I'd like you to consider someone who's 48 as of the alleged onset date and has a ninth grade education and is limited to the light level exertionally.
>
> By that I mean specifically they can lift and carry up to 20 pounds occasionally, they can lift and carry 10 pounds frequently, they can stand and walk for six hours out of an eight hour day, they can sit for six hours out of an eight hour day, they can push or pull up to 20 pounds occasionally and 10 pounds frequently.
>
> This person would have to avoid working in extreme cold or extreme heat, and they'd have to avoid concentrated exposure to smoke or fumes. They could perform simple, routine work without high production quotas or piecework, and they could have superficial interaction with co-workers and occasional interaction with the public without negotiation or confrontation with either group.

(Tr. 856.)

The VE testified that such an individual would be unable to perform Watson's past relevant work. (Tr. 856.) The VE, however, identified the following example of jobs that such an individual could perform: record clerk or file clerk, cleaner in a non-toxic setting (*i.e.* housekeeper), and cafeteria attendant. (Tr. 857-58.) Adding that the hypothetical person would be off task twenty percent of the time, however, would make such an individual unemployable. (Tr. 859.)

4

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[3]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Watson was insured on her alleged disability onset date, October 14, 1998 and remained insured through March 31, 2004. (Tr. 11.) Therefore, in order to be entitled to POD and DIB, Watson must establish a continuous twelve month period of disability commencing between those dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

---

[3] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

A claimant may also be entitled to receive SSI benefits when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Watson established medically determinable, severe impairments, due to status post right hip fracture, chronic obstructive pulmonary disease ("COPD"), bipolar disorder, panic disorder without agoraphobia, and degenerative disc disease of the cervical spine. (Tr. 13.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Watson was found incapable of performing her past relevant work, and was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. (Tr. 20-21.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Watson is not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than

6

a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether the proper legal standard was applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

### VI. Analysis

**A. Light Work**

Watson argues that the ALJ erred because substantial evidence did not support the finding

that she was capable of light exertional work. (ECF No. 15 at 10-11.) Specifically, Watson argues that: (1) no treating or consulting source has expressed an opinion as to the extent of her abilities to stand/walk and lift/carry; (2) Sundar Natarajan, M.D., an examining physician, opined that her respiratory status on mild exertion is significantly compromised and she cannot engage in strenuous activity; and, (3) Antonia Fitzgerald, M.D., a treating psychiatrist, opined that she has "difficulties standing, due to ↓circulation lower extremities." *Id*., *citing* Tr. 261, 273. Furthermore, Watson concludes that the ALJ's finding that she can perform light work is based on the ALJ's own evaluation of the medical record and that the ALJ impermissibly substituted his own judgment for that of a physician. *Id*. at 11.

Addressing Watson' s last argument first, the Court finds nothing improper in the ALJ deciding Watson's RFC, as a claimant's RFC is not a medical opinion. "Opinions on some issues, such as [opinions that you are disabled or your residual functional capacity], are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case ..." 20 C.F.R. § 404.1527(e). A recent decision of this Court explained as follows:

> The ALJ, not a physician, is assigned the responsibility of determining a claimant's RFC based on the evidence as a whole. 42 U.S.C.A. § 423(d)(5)(B); 20 C.F.R. § 416.946(c). Pursuant to the regulations, the ALJ is charged with evaluating several factors in determining the RFC, including the medical evidence (not limited to medical opinion testimony), and the claimant's testimony. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629 633 (6th Cir. 2004); SSR 96-5p, 1996 SSR LEXIS 2, SSR 96-8p, 1996 SSR LEXIS 5. The final responsibility for deciding the RFC "is reserved to the Commissioner." 20 C.F.R. § 416.927(e)(2).
>
> The Sixth Circuit has repeatedly upheld ALJ decisions where the ALJ rejected medical opinion testimony and determined RFC based on objective medical evidence and non-medical evidence. *See, e.g., Ford v. Comm'r of Soc. Sec.*, 114 F.App'x 194 (6th Cir. 2004); *Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 2009 WL 2514058, at *7 (6th Cir. 2009). "[A]n ALJ does not improperly assume

8

> the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe*, 342 Fed. Appx. 149, 2009 WL 2514058 at *7.

*Henderson v. Comm'r of Soc. Sec.*, 2010 U.S. Dist. LEXIS 18644, 6-7 (N.D. Ohio 2010).

As such, the ALJ did not act improperly in evaluating the medical evidence of record and Watson's own testimony in arriving at the RFC.

Turning to Watson's argument that no treating or consulting source has expressed an opinion as to the extent of her ability to stand/walk and lift/carry, the Court fails to see how this assertion undermines the ALJ's finding that Watson can perform a limited range of light work. Watson appears to believe that the absence of such opinions necessarily means that there is no evidence supporting the ALJ's opinion. However, the lack of such opinions can just as reasonably be interpreted to mean that no medical source thought she was significantly impaired in these areas of functioning. If anything, the dearth of opinions cuts in the Commissioner's favor, as, in the Sixth Circuit, it is well established that Watson, as the claimant – and not the ALJ – has the burden to produce evidence in support of a disability claim. *See, e.g., Wilson v. Comm'r of Soc. Sec.*, 280 Fed. App'x. 456, 459 (6th Cir. May 29, 2008) (*citing* 20 C.F.R. § 404.15129(a)). *See also Struthers v. Comm'r of Soc. Sec.*, 101 F.3d 104 (table), 1999 WL 357818 at *2 (6th Cir. May 26, 1999) ("[I]t is the duty of the claimant, rather than the [ALJ], to develop the record to the extent of providing evidence of mental impairment."); *Landsaw v. Sec'y. of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant. 20 C.F.R. §§ 416.912, 416.913(d)."); *cf. Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010) (although an "ALJ has an

inquisitorial duty to seek clarification on material facts," a plaintiff, who is represented by counsel, must provide a "factual record" relating to the length of his employment when his past work was part of the record and was the basis of the initial decision to deny benefits). However, there is a special, heightened duty requiring the ALJ to develop the record when the plaintiff is "(1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures." *Wilson*, 280 Fed. App'x. at 459 (*citing Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)). Here, however, Watson had counsel and the burden remained squarely on her to produce evidence of her disability.

Finally, Watson argues that the ALJ's RFC finding is not supported by substantial evidence because it is inconsistent with the opinions of Dr. Fitzgerald and Dr. Natarajan. First, the ALJ expressly gave Dr. Natarajan's opinion significant weight, and, as explained below, Dr. Fitzgerald's opinion little weight. (Tr. 17.) Dr. Fitzgerald's opinion that Watson had difficulty standing is contradicted by Dr. Natarajan's opinion and examination. (Tr. 258-71.) Upon examination, Dr. Natarajan found normal joint motion in Watson's hips, knees, and ankles, and normal motor movement in the hips, knees, and feet. (Tr. 270-71.) In addition, Dr. Natarajan stated that while Watson would be "unable to do any strenuous activities which would preclude physically demanding jobs" due to the compromise of her respiratory status on mild exertion, he opined that her ability to sit, stand, hear, speak, and travel were unaffected. (Tr. 261.) However, he did believe that "her ability to walk fast or climb more than eight stairs or lift and carry objects on a repeated basis is affected." *Id*. Watson reads this last statement as wholly inconsistent with the ALJ's RFC finding that she could perform light work, which requires the ability to stand/walk for six hours in an eight-hour work day. "Light work involves lifting no

more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). "Since frequent lifting or carrying requires being on ones feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 SSR LEXIS 30.

The Court finds that the ALJ was not compelled to interpret Dr. Natarajan's opinion as being inconsistent with the requirements of light work. Dr. Natarajan's opinion can reasonably be interpreted as barring only strenuous activity and rapid walking. Watson has pointed to no authority suggesting that light work necessarily entails fast, strenuous walking. In her reply brief, Watson argues that neither SSR 85-15 nor SSR 84-14 discuss the pace at which individuals are expected to walk at the light exertional level. (ECF No. 18 at 2.) The absence of any discussion on this issue, however, cannot be fairly interpreted as establishing a requirement that light work includes strenuous, fast-paced walking. In addition, though Dr. Natarajan noted that Watson's ability to lift and carry objects on a repeated basis was "affected," he did not assert that such activity was precluded altogether. Also, he did not define what amount of weight he considered too strenuous or what he meant by repeatedly. Light work involves only occasional lifting of twenty pounds, a weight which Watson lifted repetitively at Giant Eagle. The ALJ, however, limited Watson to light work which involves frequent lifting of amounts not exceeding ten pounds. As such, the Court declines to conclude that Dr. Natarajan's opinion was inherently

11

inconsistent with light work.

Moreover, even if Dr. Natarajan's opinion was construed as partially conflicting with an RFC for light work, this conclusion alone would not render the ALJ's RFC finding unsupported by substantial evidence. RFC findings may be based on objective medical evidence and non-medical evidence. Other evidence of record can also constitute substantial support of an RFC finding. The ALJ expressly cited supporting evidence, such as Watson's testimony concerning both her daily activities and her job requirements when she worked at Giant Eagle, her failure to quit smoking during the relevant time period despite her physicians' recommendations,[4] and her unremarkable hip x-ray in 2005. (Tr. 16-18.)

As such, Watson's first assignment of error is without merit.

**B.     Credibility**

Watson also contends that the ALJ failed to articulate the credibility finding. (ECF No. 15 at 11-14.) As an initial matter, an ALJ's credibility finding is entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Subjective statements concerning a claimant's symptoms are not enough to establish disability. *See* SSR 96-7p, Introduction. When a claimant alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating these symptoms. First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment.

---

[4] When Watson finally quit smoking after the relevant time period, she noted "great improvement with her breathing." (Tr. 18, citing Exh. 26F.)

12

Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms." *Id*. If these claims are not substantiated by the medical record, the ALJ must make a credibility determination based on the entire case record. *Id*.

Though credibility determinations regarding a claimant's subjective complaints rest with the ALJ, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individuals statements and the reason for the weight." SSR 96-7p, Purpose section; *see also Felisky v. Bowen,* 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"); *Cross*, 373 F. Supp. 2d at 733 (stating that an ALJ, in a unified statement, should explain his or her credibility findings in terms of the factors set forth in the regulations, thereby permitting the court to "trace the path of the ALJ's reasoning.") To determine credibility, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. *See* SSR 96-7p, Purpose. Beyond medical evidence, there are seven factors that the ALJ should consider. The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional

13

limitations and restrictions due to pain or other symptoms. SSR 96-7p, Introduction; *see also Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 732 (N.D. Ohio 2005). It is well established that an ALJ need not analyze all seven factors, but should show that he considered the relevant evidence. *Cross*, 373 F. Supp. 2d at 733; *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005).

Much of Watson's argument on this issue revolves around the treatment of Dr. Fitzgerald's opinion. (ECF No. 15 at 12-13.) However, as discussed below, the ALJ properly gave it little weight. Watson also implies that the ALJ cherry-picked the evidence. (ECF No. 15 at 14.) After a review of Watson's hearing testimony, the Court sees nothing that is inherently inconsistent with the physical requirements of light work. Watson's second assignment of error is without merit.

**C.  Treating Physician**

Watson argues that the ALJ erred by failing to state a valid reason for rejecting the opinion of Dr. Fitzgerald, a treating psychiatrist. (ECF No. 15 at 14-16.) Specifically, Watson asserts that Dr. Fitzgerald's opinion of December 17, 2002, should have been credited by the ALJ. *Id*. at 15.

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled

14

to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9). "If the ALJ declines to give a treating source's opinion controlling weight, he must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011) (*quoting Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.)

Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p). Moreover, the ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir.1984). According to 20 C.F.R. § 404.1527(e)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of

disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*. It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

The ALJ expressly considered Dr. Fitzgerald's opinion and ascribed little weight to it. (Tr. 16-17.) First, the ALJ noted that "[t]he record contains no treatment notes from Dr. Fitzgerald to support her opinions. I note that the record remained open for 14 days after the hearing to permit the submission of treatment notes from Dr. Fitzgerald. None were received prior to the issuance of this decision."[5] (Tr. 16.) Courts have found the lack of treatment notes instructive on the issue of whether a medical opinion is well-supported. *See, e.g., Burkstrand v. Astrue*, 346 Fed. Appx. 177, 180 (9th Cir. 2009) (noting with approval the ALJ's decision to ascribe less than controlling weight to a medical opinion where there was a lack of treatment notes supporting it); *Lamorey v. Barnhart*, 158 Fed. Appx. 361, 362 (2d Cir. 2006) (finding no error where the ALJ declined to give a treating physician's opinion controlling weight due, in part, to the absence of treatment notes supporting the opinion); *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (finding that the ALJ did not err by failing to accord deference to a

---

[5] A review of the hearing transcript reveals that Watson's attorney admitted that she had not made a specific request for the psychiatric records of Dr. Fitzgerald. The ALJ explicitly instructed Watson's counsel to request those records and left the record open. (Tr. 832-33.) Watson avers that the ALJ failed to realize that he had Dr. Fitzgerald's treatment notes. (ECF No. 15 at 16.) Nonetheless, Watson's brief does not identify the presence of these notes anywhere in the record.

treating physician's opinion considering the lack of treatment notes and the claimant's failure to disclose important information to his doctor). Nonetheless, as stated in a recent opinion from this Court, the lack of treatment notes supporting a treating physician's opinion does not completely negate an ALJ's duty to adhere to the treating physician rule. *See Hermiller v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 141364 (N.D. Ohio Dec. 8, 2011) ("[U]nder the treating source rule, even if a physician's opinion is not well-supported, and therefore not entitled to controlling weight, the ALJ is not permitted to simply dismiss the opinion... [E]ven if Defendant was correct that these doctors' opinions were not well-supported or were conclusory, this determination would not have obviated the ALJ's obligation to consider their opinions and provide good reasons for the weight he ultimately assigned to their findings.")

Here, however, the ALJ did not accord little weight to Dr. Fitzgerald's opinion solely on the basis that treatment notes were absent from the record. As pointed out by the Commissioner, the ALJ continued with his analysis, and pointed to specific records from other medical sources, including treating sources, that suggested Watson's mental limitations were not as severe as opined by Dr. Fitzgerald. (Tr. 17.)

Based on the foregoing, the Court finds that the ALJ set forth sufficient reasons for the weight he accorded to Dr. Fitzgerald's opinion, as he discussed both the supportability of the opinion and its consistency, or lack thereof, with the record as a whole. As such, Watson's third assignment of error is without merit.

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED and

judgment is entered in favor of the defendant.

     IT IS SO ORDERED.

                                      <u>/s/ Greg White</u>
                                      U.S. Magistrate Judge

Date: March 1, 2012